SPEER et al. v. RURAL SPECIAL SCHOOL DIST. NO. 50 OF NORPHLET, UNION COUNTY, ARK., et al.

No. 11232.

Circuit Court of Appeals, Eighth Circuit.

Dec. 2, 1938.

S. L. White, of Little Rock, Ark., for appellants.

Charles E. Wright, of El Dorado, Ark. (Joe K. Mahony, Henry S. Yocum, and Emon A. Mahony, all of El Dorado, Ark., on the brief), for appellees.

Before STONE, WOODROUGH, and VAN VALKENBURGH, Circuit Judges.

STONE, Circuit Judge.

Because the parties are in sharp disagreement as to what are the issues before this Court, it is necessary to state an outline of the litigation up to and including the order which is the subject of this appeal. Otherwise, the various contentions of the parties are difficult to state in an understandable way.

Plaintiff (an appellant) Speer claims to be trustee under two deeds of trust executed by Rural Special School District No. 50 of Norphlet, Union County, Arkansas (sometimes called Norphlet Special School District of Union County, Arkansas), to secure bonds issued by the district. In each of these deeds of trust, was a provision 'requiring the district to create a "Building Fund" in which should be set aside sufficient revenue from district taxes to take care of interest on and retirement of the bonds secured by the respective deeds of trust. He brought this bill in equity against the officers of the school board, the county collector and the county treasurer. The reliefs sought were (1) a temporary order restraining defendants (until the case can be heard) from paying out any monies of the district or from accepting school warrants in payment of taxes due the district and that the order be made permanent after hearing of the case; (2) judgment for past due interest and principal payments on the bonds (also for compensation to the trustee and attorney fees); (3) the district be required to pay "as rapidly as possible, and still permit the reasonable operation of its schools, said sums", to set up a "Building Fund" account to be credited annually "out of its first revenues" with the sums specified in the deeds of trust, and to remit same before the due dates under the deeds of trust; (4) for foreclosure and general relief.

On the day the above petition was filed (May 23, 1935), appellant Arkansas Municipal Bond Bureau (an Arkansas corporation) filed a petition in intervention wherein it claimed to be agent for holders of past due bonds and interest of the district issued under "various deeds of trust and mortgages", each of which provided for a "building fund" and which pledged the "faith, credit and resources" of the district. The prayer was "in addition to the prayer of the bill in equity filed herein" for judgment and for participation "pro rata with plaintiff herein and the other bondholders" in any sums paid by the district in liquidation of its bonded indebtedness.

Process to answer the bill and the intervention was served May 24, 1935.

February 18, 1936, the above Bureau filed a "second intervention" covering other bonds and interest and seeking the same relief as in its original intervention.

The same day, defendants answered the bill and the interventions by a general denial and a defense attacking the validity of the various bonds and various deeds of trust.

July 7, 1936, the above Bureau filed a "third intervention" covering yet other bonds and praying the same relief as in the earlier interventions.[1]

October 19, 1936, a hearing on the application for a restraining order resulted in an order (1) directing defendants to set aside "the equivalent of eight (8) mills taxes" and place same in an account to be designated as "building fund", to be paid out upon future orders of the court; (2) defendants (county collector and county treasurer) were restrained from accepting school warrants in payment or redemption of district taxes; (3) $2,500 theretofore deposited with the clerk by the district, was ordered paid in redemption of past due interest coupons; (4) allowance of fee to attorney for trustee; (5) express retention of jurisdiction.

This hearing was upon a stipulation which admitted the "building fund" provision in the various deeds of trust; which set forth the dates, amounts and interest rates and defaults on the bonds issued by

---

[1] From none of these interventions does it clearly appear whether or not the bonds covered thereby are secured by either of the two deeds of trust set out in the bill of equity.

the district; which set out the assessed value of property in the district, an annual tax of 18 mills, the revenue therefrom and the income of the district (from that and other sources) for the calendar year 1935; and which set forth that no amount had been set aside as a "building fund" in 1934 or 1935 but that, in 1935, 6 mills had been so voted for the year 1936.

Also, on October 19, 1936 (a supplemental order was entered October 29, 1936), an order was entered appointing The First National Bank of Eldorado, Arkansas, as "paying agent" to disburse the above deposited funds and future accumulations in the "building fund" in payment of defaulted bond interest.

On July 6, 1937, an order was entered (on a petition of the district filed that day) allowing the district to borrow funds from the State Board of Education to purchase its own bonds at a discount and providing for the payment of interest coupons and certificates of indebtedness for accrued interest on bonds so purchased. One provision of said order is as follows: "And the court doth further order that the debt service fund of eight mills heretofore set up by order of this court shall be disbursed as follows: The district shall pay out of said fund in order of maturity, paying the oldest items first, all interest coupons and all accrued interest on the $109,000.00 outstanding bonds, including accrued interest to May 1, 1937, and all certificates of indebtedness which the defendant district may have to issue in order to provide for the payment of interest up to date or purchase of any bonds purchased at a discount, and such certificates shall be considered the same as interest coupons and shall be entitled to the same priority that they would have if they were interest coupons due as of the date for which they may be given, and that after all interest has been paid on the $109,000.00 outstanding bonds to May 1, 1937, as hereinabove provided for, whether evidenced by coupons or certificates, then the balance of the said eight mills fund set up for debt service shall be apportioned between the State Revolving Loan Fund which will receive 47/109 of said fund, and the other 62/109 of said fund shall be set aside for the payment of interest and principal on the $62,000.00 of bonds that are not purchased at a discount but now remain in the hands of private owners."

In an order (July 16, 1937) directing payment of premiums for insurance of the property of the district appears a recital as follows:

"the court doth find:

"That, by proper orders of this court, heretofore made, eight mills has been set aside and is paid to The First National Bank of Eldorado, Arkansas, as paying agent, to meet the bonded indebtedness, interest and other expenses, and that ten mills is permitted the District to carry on the school;".

The entire above recital pictures the state of this litigation when the plaintiff and intervener filed a joint motion (April 19, 1938) resulting in an order from which they bring this appeal.

This motion sets forth the creation of the "building fund", the total bond indebtedness of the district, the existing defaults, the purchase of discounted bonds by the district, the amounts and defaults of bonds and coupons represented by them, the estimated time to retire their bonds under the above plans, the damage to such bondholders through existing and future depreciation of their bonds if the plans are pursued, the rights (under the deeds of trust) to compel levy of taxes sufficient to pay the bonds and to compel application of the entire income of the district to bond payment, their non-agreement to the existing plans, and their present insistence upon their rights, in order to prevent further damage. The relief prayed is as follows: (1) A declaratory judgment for the amount of their bonds, defaulted interest thereon, and compensation for the trustee and his attorney; (2) injunction preventing the district and the county treasurer from paying out any money which they "now have or may hereafter receive" for the district; (3) application of such funds to liquidation of "such judgment or decree as the court may enter"; (4) declaration that such judgment is a lien on the real property of the district; (5) "for the relief prayed for in the original bill and for all other equitable relief to which it may be entitled."

The order entered on this motion and here appealed is as follows: "This April 19, 1938, come the plaintiff and intervener by S. L. White, their solicitor, and come the defendants by J. K. Mahony, their solicitor, and plaintiff and intervener present to the court their motion for final decree in the above entitled cause, and

upon consideration thereof the court doth overrule said motion. To which ruling the plaintiff and intervener except."

The errors assigned are as follows:

"The Court erred in overruling plaintiff's and intervener's motion for a decree and judgment and in refusing to grant them any additional relief.

"The Court erred in overruling plaintiff's and intervener's motion to enjoin and restrain the defendant district and the defendant County Treasurer of Union County, Arkansas, from paying out any money which they have or may hereafter receive for the credit or benefit of said district.

"The Court erred in overruling plaintiff's and intervener's motion to enter a mandatory order that all funds of the defendant district be applied towards liquidation of its outstanding bonded debt."

Counsel do not agree as to just what issues are properly before this Court and it is necessary to determine that matter before passing to the consideration of such as are properly before us. The assignment of errors includes several matters but it may be that we cannot consider all of them. Such included matters are (1) failure to enter a decree or to grant additional relief; (2) failure to grant an injunction preventing the district and the county treasurer from paying out money of the district; and (3) failure to require all funds of the district to be applied toward liquidation of the bonded debt of the district.

The essential things sought by the motion were to secure a final determination and enforcement of the relief prayed in the bill and the intervening petitions. To this was added a prayer for a declaratory judgment or decree (not sought theretofore in the bill or intervention) defining the rights of plaintiff and of intervener. We need not determine whether a motion of this character in a situation like the present is an "appropriate pleading" under the Declaratory Judgment Act, U.S.C.A. Title 28, Sec. 400(1), but, without such examination, may accept it as such solely for the present purpose of ascertaining what issues are before us.

The situation thus presented is as follows: There is a bill and an intervention asking relief under the bonds and the supporting deeds of trust. The answers thereto contain a general denial of all material allegations of the bill and of the first and second intervening petitions and a challenge of the validity of the bonds and of the deeds of trust. There has never been any hearing on, waiver of or determination of such issues. In short, the entire right to any recovery or relief by plaintiff or intervener has reached the stage only of a direct issue in pleadings. The court is pursuing a plan intended to secure gradual payment of the bonded debt and to keep the school in the district in operation. This plan, with some later modifications, had been in force for eighteen months before this motion was filed. The transcript is barren of any objection by appellants to any of the orders made concerning promulgation or execution of this plan. There have been no appeals from such orders. Finally becoming dissatisfied with the operation of the plan, appellants file their motion seeking, in effect, abandonment of the plan and a determination of their rights under the issues framed by the pleadings. The court refused so to act. We are asked to decide this refusal to be erroneous.

If we should so decide, what would our order be? Obviously, we could not order the court to declare validity and enforcement of the bonds and deeds of trust. Those matters have never been tried by the lower court but are pending there on sharply challenging issues involving disputes of law or fact or both. All we could do in this situation would be to require the lower court to act—to hear and determine such issues. When a lower court refuses to act, this court can, usually, require it to act but ordinarily cannot direct what that action shall be. A proceeding to require such action is one directed at the judge for an alleged failure or refusal to perform his duties. It is no determination of rights between the parties to the litigation. In such character of proceeding the judge is a party and has the right to justify his inaction, if he can, by pleading and supporting evidence. Because of the character and attributes of such a proceeding, it must take the form and have the substance of a mandamus proceeding. McClellan v. Carland, 217 U.S. 268, 280, 30 S.Ct. 501, 54 L.Ed. 762; In re Grossmayer, 177 U.S. 48, 49, 50, 20 S.Ct. 535, 44 L.Ed. 665; Ex parte Parker, 120 U.S. 737, 743, 7 S.Ct. 767, 30 L.Ed. 818; Ex parte Brown, 116 U.S. 401, 402, 6 S.Ct. 387, 29 L.Ed. 676. The present proceeding is purely one of appeal from an order which announces that the judge will

not take the action desired by the motion which is, in essence, to grant the relief sought in the bill and intervening petitions.

■ There is another purpose which may be involved in the motion and covered by the order. That purpose is the restraint of the district and of the county treasurer from paying out the funds of the district. It is very doubtful whether appellants stated this relief in the motion as one which they desired separate from a final determination and enforcement of their rights. It fits snugly in as an element in the enforcement of their ultimate rights when such are determined. However, there is a possibility that such separate remedy may be within the motion. We prefer to give appellants the benefit of this doubt and so to regard that part of the prayer of the motion. So regarded, the refusal of the injunction is appealable.

■■ The result of what has been stated above regarding the issues properly before us is that the only issue here is the propriety of the order in so far as it denied the injunction sought. Obviously, this is an injunction sought pendente lite because its permanence must await the final determination of the rights of the parties under the pleadings and there has been no such determination. Action upon such temporary injunctive relief is within the sound judicial discretion of the trial judge and his determination will be overturned only upon a clear showing of abuse of that discretion. Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 52, 58 S.Ct. 459, 82 L.Ed. 638; United States v. Corrick, 298 U.S. 435, 437, 438, 56 S.Ct. 829, 80 L.Ed. 1263; Corporation Commission of Oklahoma v. Cary, 296 U.S. 452, 458, 56 S.Ct. 300, 80 L.Ed. 324; Alabama v. United States, 279 U.S. 229, 230, 231, 49 S.Ct. 266, 73 L.Ed. 675. Therefore, the question here is whether there was a clear abuse of discretion in refusing this temporary injunction.

■ The situation controlling our answer to this question is, very concisely stated, as follows. Appellants represent some of the bonds issued by the district and secured by deeds of trust upon its property. There is default in the interest and some of the principal of those bonds as well as others

not represented by them. They brought an action or intervened to enforce the rights of such bondholders. Issues of invalidity and general denial are pleaded and no hearing has been had thereon. A plan attempting to secure gradual payment of the bonds and, at the same time, to keep the school open has been in force for eighteen months. Related to that plan, the district has been allowed to and has purchased, at a discount, $47,000 of a total of $109,000 of outstanding bonds. To make this purchase, the district borrowed funds from the State, placing the purchased bonds as collateral. To issue the injunction would stop the school until this litigation is finally determined because it would deprive the district of the use of any present or future funds.

In this situation we cannot say that there was an abuse of discretion in denying the injunction. Special School District of Malvern v. Speer, 8 Cir., 75 F.2d 420.

■ At the time of argument before us, appellants presented a motion "to have supplemental and corrected record". This motion was occasioned by a statement in the brief of appellees to the effect that it was the duty of appellants to support their motion by evidence and to incorporate such evidence in the transcript here. If there were any dispute here as to any essential matter of record not in the transcript here, this motion might be proper. Rule 75(h) Rules of Civil Procedure for the District Courts of the United States, 28 U.S.C.A. following section 723c. Inquiry of counsel in open court developed that there was no contention by either side that such evidence had been introduced. Therefore, all that the motion could accomplish would be to show that no such evidence was introduced. That is the present state of the transcript. The motion is denied.

The court regards the refusal to grant a temporary injunction as the only appealable matter before it. In so far as the order appealed from relates to other matters the court expressly announces no decision or views since they are of a nature not presentable to us on this appeal—this we do without prejudice to the right of appellants to proceed otherwise, as they may be advised, as to such matters. As to the injunction feature of the order, the action of the trial court is affirmed.