Robin BURDICK, Plaintiff,

v.

**Robert J. MIECH, as Milwaukee County Judge, Civil Division, and Robert Russell, Milwaukee County Corporation Counsel, his aides, assigns and employees, Defendants.**

No. 74-C-364.

United States District Court,
E. D. Wisconsin.

Nov. 14, 1974.

Legal Aid Society of Milwaukee by Robert J. LeBell, Milwaukee, Wis., for plaintiff.

Robert P. Russell, Corp. Counsel by David J. Siler, Milwaukee, Wis., for defendants.

## DECISION AND ORDER

MYRON L. GORDON, District Judge.

This matter is before me on the plaintiff's motion for a temporary restraining order; the motion arises from an order dated August 29, 1974, in which I ruled that the plaintiff's application for a three-judge court and a preliminary injunction be treated as a motion for a temporary restraining order. I conclude that the plaintiff's motion should be denied.

On September 11, 1973, the plaintiff, who is not and never has been married, gave birth to a child out of wedlock. The plaintiff is a recipient of aid for dependent children under grant no. A 60844. In early April, 1974, she was served with an order for appearance issued by a judge of the county court. The appearance has been adjourned several times and is currently set for November 18, 1974.

Authority for requiring the plaintiff's appearance derives from Wis.Stat. § 52.-24 (1971), which states in part:

> "*Inquiry by district attorney.* If any woman bears a child out of wedlock which is or is likely to become a public charge, . . . the district attorney, if he believes it to be to the best interest of the child, shall apply to any court or court commissioner of the county, who shall thereupon examine such woman on oath respecting the father of such child, the time when and the place where such child was begotten and such other circumstances as he deems necessary; and such court or court commissioner shall reduce such examination to writing and shall thereupon issue a warrant, without further or formal complaint, to apprehend the reputed father, and the same proceeding shall be had thereon and with like effect as provided in cases of complaint made by such woman."

The complaint challenges the constitutionality of § 52.24 on grounds that it denies the plaintiff: (1) her fifth amendment privilege against self-incrimination; (2) her right of privacy guaranteed by the first, ninth and fourteenth amendments; and (3) equal protection of the law under the fourteenth amendment. The plaintiff seeks a declaration that § 52.24 is unconstitutional and a permanent injunction, restraining the defendants from proceeding with or hearing plaintiff's testimony pursuant to § 52.24. Jurisdiction is vested in this court under 28 U.S.C. §§ 1343(3), 2201, 2281, 2284; 42 U.S.C. § 1983; and U.S. Const. amends. I, V, XIV.

Before a temporary restraining order can issue, the plaintiff must meet three requirements. She must demonstrate: (1) that if interim relief is not granted, imminent irreparable harm will result; (2) that there is no manifest danger of substantial harm to other parties; and (3) that success on the merits is probable. I conclude that the plaintiff has failed to show that success on the merits is probable.

The plaintiff urges that the traditional burden regarding success on the merits be abandoned for a lesser standard. She argues that because the balance of hardships tips decidedly in her favor, it is sufficient that she raise

> " ' . . . questions going to the merits so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for more deliberate investigation.' " Mytinger & Cassleberry, Inc. v. Numanna Laboratories Corp., 215 F.2d 382, 385 (7th Cir. 1954), *quoting* Hamilton Watch Co. v. Benrus Watch Co., 206 F.2d 738, 740 (2d Cir. 1953).

I am not convinced that plaintiff has made the necessary showing to permit the use of this less onerous burden.

The plaintiff asserts that she will either suffer loss of alleged constitutional rights or will potentially be subject to punishment for contempt if the § 52.24 hearing is permitted to go forward. While these harms might be great if inflicted, there is a doubt that either harm will come about.

On the other hand, a restraining order might be adverse to the infant's interests. Until the child's paternity is established, significant benefits are unavailable. Aside from the obvious potential for support, the child, though illegitimate, might become entitled to such items as social security death benefits and life insurance. Doe v. Norton, 356 F.Supp. 202, 206 (D.Conn.1973), contains a more comprehensive list.

Thus, it appears that so long as the § 52.24, proceeding is stayed, the child might suffer serious harm. In my opinion, therefore, the balance of hardships is not so decidedly in favor of the plaintiff that the reduced burden of Mytinger & Cassleberry, Inc. v. Numanna Laboratories Corp., *supra*, is appropriate. Accordingly, the traditional requirement that the plaintiff show a strong probability of success on the merits will be applied.

As stated, the plaintiff's claim on the merits challenges the constitutionality of § 52.24 on three grounds; it allegedly infringes the plaintiff's privilege against self-incrimination, constitutional right of privacy and denies her equal protection of the law. In my opinion, none of these claims is likely to succeed as grounds for invalidating § 52.24. I will take up each ground seriatim.

## I. PRIVILEGE AGAINST SELF-IN-CRIMINATION

The plaintiff claims that the disclosures required by § 52.24 will compel her to provide information which could be used to convict her for fornication under Wis.Stat. § 944.15 or lewd and lascivious behavior under Wis.Stat. 944.-20(3) in violation of her fifth amendment privilege against self-incrimination. Section 52.24 is essentially a civil disclosure statute.

Two reasons strongly indicate that success on the self-incrimination claim is not probable. First, it appears that the issue is not yet ripe for adjudication under the doctrine announced in Communist Party of the United States v. SACB, 367 U.S. 1, 81 S.Ct. 1357, 6 L. Ed.2d 625 (1961). The record indicates that the plaintiff has not yet asserted her privilege before the county judge. The Supreme Court in *Communist Party* stated in declining to rule on the self-incrimination challenge to a civil disclosure statute:

> "We cannot, on the basis of supposition that privilege will be claimed and not honored, proceed now to adjudicate the constitutionality under the Fifth Amendment of the registration provisions." 367 U.S. at 107, 81 S.Ct. at 1416.

The Court indicated that review on the merits would be appropriate only "when a demand for information has been, at the least, made and resisted." *Id.* at 110, 81 S.Ct. at 1418.

Secondly, the judicial defendant may grant the plaintiff immunity. Of course, a grant of immunity would be premature until the privilege is asserted. If the grant of immunity is sufficiently broad, however, it will supplant the privilege. See Kastigar v. United States, 406 U.S. 441, 462, 92 S.Ct. 1653, 32 L. Ed.2d 212 (1972).

## II. CONSTITUTIONAL PRIVACY

The plaintiff advances a number of theories to support her contention that § 52.24 is violative of her constitutional right to privacy. Among the sources for that right are the first, fourth, fifth, ninth and fourteenth amendments to the United States Constitution as construed in such pertinent cases as: Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); Stanley v. Georgia, 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969); Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965); and Pierce v. Society of Sisters, 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925). See also Eisenstadt v. Baird, 405 U.S. 438, 92 S. Ct. 1029, 31 L.Ed.2d 349 (1972).

A composite of the plaintiff's privacy attack on § 52.24 reveals the essential nature of her claim to be that she has a

fundamental right to avoid testifying with respect to either the identity of the father of her child or the details concerning "the time when and the place where such child was begotten and such other circumstances as [the court] deem[s] necessary . . . ." Wis. Stat. § 52.24 (1971).

A three-judge panel in Doe v. Norton, 365 F.Supp. 65 (D.Conn.1973), prob. juris. noted, 415 U.S. 912, 94 S.Ct. 1406, 39 L.Ed.2d 466 (1974), faced a privacy challenge to a Connecticut statute which, like § 52.24, compels an unwed mother to identify the father of her child. The *Norton* panel, however, considered only the question whether there is a fundamental right to withhold the identity of the putative father. In concluding that no such right existed, the court considered both the scope of state power to compel testimony and the nature of the plaintiff-mother's interests affected by the Connecticut statute. See 365 F. Supp. at 73–78.

In my opinion the reasoning employed in *Norton* applies with equal force to the broader question presented by § 52.24—whether the plaintiff is afforded constitutional protection from revealing the details necessary to enforce the father's paternity obligation, in addition to his identity. In language plainly applicable to this broader question, the *Norton* court stated at pages 77–78:

> "The object of the inquiry is to enforce a familial monetary obligation, not to interfere with personal privacy. There is no intrusion into the home nor any participation in interpersonal decisions among its occupants . . . . The statute does not forbid an unwed mother to have a man in the house or even in her bedroom. . . . The only restriction it imposes upon either the unwed mother or the biological father to do as they please or make any decisions they wish in whatever relationship they desire to maintain is that the father satisfy his legal obligation to support his own child and that the mother provide whatever information she possesses

useful toward that end." (citations & footnotes omitted).

On the reasoning of Doe v. Norton, *supra*, I conclude that the plaintiff has not demonstrated the requisite probability that her privacy challenge to § 52.24 will be successful.

## III. EQUAL PROTECTION

■ Having just concluded that the plaintiff has failed adequately to demonstrate that § 52.24 infringes her fundamental right to privacy, I must evaluate her equal protection objections to that statute against the standard of rationality, not strict scrutiny.

The test of rationality announced in Boraas v. Village of Belle Terre, 476 F. 2d 806 (2d Cir. 1973), rev'd on other grounds, 416 U.S. 1, 94 S.Ct. 1536, 39 L.Ed.2d 797 (1974), is the appropriate one in view of the fact that "the face of the statute furnishes sufficient reliable guidance to its purpose . . . ." Doe v. Norton, 365 F.Supp. 65, 80 (D. Conn.1973). Accordingly,

> "the classification must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike." F. S. Royster Guano Co. v. Virginia, 253 U.S. 412, 415, 40 S.Ct. 560, 561, 64 L.Ed. 989 (1920).

The manifest purpose of § 52.24 is to secure benefits for the child which derive from establishing paternity. It is readily apparent that the statute's classification, based on wealth, meets the *Royster* formulation because a child who is a public charge or who probably will become one is more likely than the child of a woman in more favorable economic circumstances to need the resources potentially available from his father.

For the foregoing reasons, I conclude that the plaintiff's equal protection objections to § 52.24, like her self-incrimination and privacy theories, are unlikely to succeed on the merits.

The issues presented by the complaint cannot be said to be unsubstantial, even though I have doubts as to the probability of the plaintiff's success. It follows that a request should be made by this court for the convening of a three-judge court. Such a request will be made in the near future.

Therefore, it is ordered that the plaintiff's motion for a temporary restraining order be and hereby is denied.